PREGERSON, J.,
dissenting:
Igor Gunn was a member of his employer’s long-term disability plan (“Plan”). Reliance Standard Life Insurance insures the Plan and is the Plan’s claims administrator — a structural conflict of interest.
Gunn suffers from multiple sclerosis and depression. Gunn applied for long-term disability benefits. Reliance initially approved Gunn’s claim and paid Gunn long-term disability benefits for twenty-four months.
Under the Plan, a member loses his eligibility for long-term disability benefits after twenty-four months if the member’s disability is “caused by or contributed to by mental or nervous disorders.” As the twenty-four month mark drew near, Reliance decided that despite Gunn’s multiple sclerosis, Gunn would have been able to work if he had not also suffered from depression. Based on that decision, Reliance terminated Gunn’s long-term disability benefits. The majority concludes that Reliance’s decision to terminate Gunn’s benefits was reasonable and that Reliance did not abuse its discretion. I disagree.
As noted above, the Plan has a structural conflict of interest because Reliance both administered and insured the claims filed under the Plan. For that reason we “consider numerous case-specific factors, including the [] conflict of interest, [to] reach a decision as to whether [Reliance abused its discretion] by weighing and balancing those factors together.” Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d *157 623, 630; see also Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962 (9th Cir.2006) (en banc). As outlined below, on balance, a review of the relevant factors in this case demonstrates that Reliance did abuse its discretion.
First, although some medical evidence supported Reliance’s decision to terminate Gunn’s benefits, Reliance disregarded or discounted contrary medical evidence. Specifically, Reliance disregarded or discounted medical evidence supporting the conclusion that Gunn’s multiple sclerosis alone rendered him unable to work. Examples of such evidence include a 2001 report from Dr. Jessica Cho, one of Gunn’s treating physicians. In that report Dr. Cho concluded that Gunn’s multiple sclerosis rendered Gunn unable to work. Dr. David Brandes’s 2003 report is another example of such evidence. In that report, Dr. Brandes, a neurologist at the Nor-thridge Multiple Sclerosis Center, concluded that Gunn was “totally disabled as a result of his multiple sclerosis.”
Second, Reliance initially misrepresented to Gunn the nature of its investigation. Specifically, Reliance sent Gunn a letter stating that it was investigating whether Gunn was disabled to such an extent that he could not hold “any occupation.” The letter made no mention of the Plan’s mental/nervous disorder limitation. Reliance, however, was not investigating whether Gunn was able to perform “any occupation,” but rather was investigating whether Gunn’s disability was caused by his depression such that he was ineligible for continued benefits under the Plan’s twenty-four month mental/nervous disorder limitation.
Third, Reliance hired, and relied on the evaluation of, Dr. William Hauptman, a medical expert who was previously found to have engaged in biased claims evaluations. See, e.g., Conrad v. Reliance Standard Life Ins. Co., 292 F.Supp.2d 233, 238 (D.Mass.2003) (“[T]he reports Dr. Haupt-man generated betray a palpable bias in favor of rejecting the claim.”). Finally, Reliance asked the medical experts that it hired whether Gunn’s inability to work was dependant on his depression, but Reliance did not ask Gunn’s medical providers to answer that question.
In sum, Reliance terminated Gunn’s benefits based on its decision that, despite Gunn’s multiple sclerosis, Gunn would have been able to work if he had not also suffered from depression. Yes, some evidence supports that decision. But, in my opinion, the evidence that supports Reliance’s decision is clearly outweighed by the evidence that undermines it. There was medical evidence that Gunn’s multiple sclerosis alone did render him unable to work. Reliance, however, did not reconcile that evidence with its contrary conclusion. Moreover, Reliance initially misrepresented to Gunn the nature of its investigation — leading him to believe that it was investigating the extent of his disability when, in fact, it was investigating the cause of his disability. Furthermore, Reliance hired Dr. Haupt-man, a medical expert with a history of biased evaluations. And finally, Reliance did not ask Gunn’s medical providers whether Gunn’s multiple sclerosis alone rendered him unable to work. For these reasons, I conclude that Reliance abused its discretion and acted in its own self-interest when it terminated Gunn’s long-term disability benefits. Accordingly, I dissent.